PETER THUESEN, Appellant, v. ALBERT JOHNSON, Appellee.

FRAUD: Evidence—Weight and Sufficiency. Evidence bearing up-
on an exchange of properties, the exaggerated values placed
thereon by both parties, and the alleged fraudulent represen-
tations inducing the trade, reviewed, and held insufficient to
establish fraud.

*Appeal from Pocahontas District Court.*—N. J. LEE,
Judge.

MARCH 18, 1918.

SUIT in equity to rescind and set aside a contract for
the sale of land. Upon trial to the court, the petition was
dismissed, and plaintiff appeals. The material facts are
stated in the opinion.—*Affirmed.*

*Ralston & Shaw* and *J. M. Graham,* for appellant.

*H. M. Boorman, V. Lingby,* and *J. M. Berry,* for appel-
lee.

WEAVER, J.—The plaintiff, being the owner of certain
machinery, fixtures, and materials constituting what is
known as a lightning rod factory, at Council Bluffs, Iowa,
and the defendant, being the owner of 315 acres of land
in Pocahontas County, Iowa, entered into a written con-
tract, under date of December 12, 1912, whereby defendant
undertook to sell and convey the land to plaintiff, at the
agreed price of $40,950. By the terms of the contract the
defendant acknowledged the receipt of an advance payment
of $10,745, and plaintiff undertook to pay the remainder of
the consideration by assuming an existing mortgage incum-
brance on the land for $8,000, and by the payment of the

further sum of $22,155 in cash on July 1, 1915, with interest at six per cent after February 1, 1913. Though not specifically stated in the contract, it is admitted as a fact that the advance or initial payment of $10,745 on the land was made by the transfer and delivery to the defendant of the lightning rod factory, machinery, and materials, owned by the plaintiff. On October 3, 1913, this action was begun to cancel the contract, on the ground that it had been procured by fraud and misrepresentation on the part of defendant and of others acting in his interest. Issue being joined upon these allegations, the trial court heard the evidence, found that the alleged fraud had not been sufficiently established to justify the equitable relief demanded, and, as already stated, dismissed the bill.

The law applicable to cases of this character is too familiar to be the subject of dispute between counsel, and the arguments in this court have been directed almost exclusively, as, indeed, they must be, to the question of fact: Was the procurement of this contract on the part of defendant accomplished by fraud and misrepresentation? The substance of the alleged fraud is that defendant, in person and by his agent, one Frederickson, and also by combining and conspiring with one Hurley and one Smith, induced and led the plaintiff to believe that the land in Pocahontas County was of good agricultural quality, well located, not subject to overflow, and reasonably worth $130 per acre; and that plaintiff, having no prior knowledge or information concerning said property, and believing and relying upon the truth of said representations, entered into said contract and assumed the obligations thereof. It is further charged that said representations were false; that the land was of very inferior quality, much of it subject to frequent overflow, not well adapted to agricultural use, and not, in fact, worth to exceed about $70 per acre; and that, having discovered the fraud so perpetrated upon him, he notified the

defendant of his election to rescind the contract. As is usual in litigation of this character, the alleged representations are, for the most part, the subject of sharp conflict in the testimony, and, in so far as the alleged statements are admitted, their substantial truth is also involved in controversy. The printed abstract of the testimony fills a volume of 250 pages, and it includes the examination of a large number of witnesses; and it is manifestly impracticable, even if it were otherwise desirable, to set it out, even in condensed form. Moreover, as each fact case depends so largely upon its own peculiar combination of circumstances, and upon the ever-varying degree of credibility of individual witnesses, its decision is of little value as a precedent. It may be said, however, that evidence on the part of plaintiff tends to show that he is a native of Denmark, who came to America after he had reached his majority, since which time he has lived principally in southwestern Iowa. He is a butter maker by occupation, and has worked in that capacity most of the time. It appears, however, that he developed some capacity for business generally, and, before the deal now in question, had made various ventures in buying, selling, and trading property, with a reasonable degree of success. The defendant is also of Danish birth, and was in business as a merchant at Atlantic, Iowa. He was also, to some extent, a dealer and trader in lands and other property. He acquired the Pocahontas land in 1908, in exchange for a stock of goods, at an estimated price of $75 per acre, and had owned it about four years when he made the contract with plaintiff. He had listed it with Frederickson, an agent, for sale at $125 per acre. Plaintiff also acquired the lightning rod property in a trade or exchange ·for other property, and desired to dispose of it for land. Frederickson mentioned to plaintiff the land owned by defendant, and suggested that he call on defendant with reference to it; but plaintiff expressed the thought that he

could not well handle so large a property. Within a short time, plaintiff, in company with a brother, called upon the defendant, and discussed the terms upon which an exchange could be made. Following this interview, and at defendant's suggestion, the plaintiff, in company with his brother and Frederickson, went to Pocahontas County to see the land, and, after the inspection so made, he returned home, and the written contract in suit was finally executed, and the lightning rod property was turned over to defendant, who has since sold it. Defendant did not accompany plaintiff on his trip to see the land, and says he told plaintiff to examine it and satisfy himself in regard to it, and then, if he desired, they could further discuss the terms of an exchange. On going to the land, plaintiff found one Hurley in possession as tenant, and also met Smith, a loan agent, at the near-by town of Rolfe; and he claims to have been considerably influenced in deciding to take the land by statements and representations made by these men; and it is charged in the petition that they were both agents of, or conspirators with, the defendant, assisting him in deceiving the plaintiff with respect to the quality and value of the land. It must be said, however, that the charge of collusion between defendant, Hurley, and Smith is without substantial support in the record. It is also urged that the effect of plaintiff's inspection of the land as evidence that he was not deceived is lessened by the fact that a slight snow had just fallen, rendering it difficult for him to ascertain the quality of the soil for himself, and rendering him more dependent upon the defendant's representations; and this is doubtless true, in some degree, and if it were satisfactorily shown that defendant, or Frederickson, his agent, took advantage of such situation to mislead him to his injury, it would be no defense to his action for them to say that, had he been more diligent in his examination, he would have discovered the deception and saved himself from loss.

But the bald misrepresentations charged by the plaintiff
are denied by the defendant and Frederickson; and, as
fraud will not be presumed, and the burden is upon plaintiff
to establish it, as alleged, we are inclined to the view taken
by the trial court that the showing made by plaintiff is in-
sufficient to justify the relief prayed for. The most which can
be said for the plaintiff's case is that it presents some fea-
tures which suggest ground for suspicion of fraud; and, if
it clearly appeared that the contract price of the land gross-
ly exceeded its real market value, we might be inclined to
attach more weight to such indications. It is evident, how-
ever, that plaintiff, no less than defendant, put a trading
price or estimate upon the property he proposed to exchange,
and that, in each instance, such figure was in excess of the
real market value. Such is the way of the land trader in
general, and, if not accompanied with misrepresentation or
deceit, it is entirely compatible with fair dealing. Defend-
ant had listed his land with his agent for sale at $125 per
acre; but, in negotiating with plaintiff for this exchange, he
made his first offer on the basis of $135 per acre. The
deal was finally closed at $130 per acre. Of the testimony
upon the question of market value at the date of the con-
tract, the witnesses for plaintiff place it at from $60 to $85
per acre, and say it has since advanced; while the witnesses
on the part of defendant estimate it at from $100 to $125
per acre. On the other hand, the trading price of $10,750
put upon the lightning rod property appears to have been
several thousand dollars in excess of its actual value; and,
if we make due allowance for the exaggeration of values on
both sides, it is reasonably clear that defendant did not re-
alize in excess of $120 per acre for the farm. While this
may have been a good price, it is not, in our judgment,
shown to be so excessive as to suggest fraud or undue ad-
vantage on the part of defendant. Indeed, it is difficult
to read the entire record without a conviction that plain-

tiff became the victim of his own mistake in judgment in attempting so large a transaction without sufficient means to render the venture a safe one.

We are satisfied with the conclusion of the trial court that the charge of actionable fraud and misrepresentation is not established by a preponderance of the evidence, and the decree appealed from is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.